## HINES, Director General of Railroads, v. ANGLE.

(Circuit Court of Appeals, Fifth Circuit. March 30, 1920.)

No. 3487.

**1. Railroads ⊙⟹400(1, 8, 15)—Negligence in striking person on track question for jury.**

An action for the death of a person, struck by a train while walking on defendant's railroad track, *held* properly submitted to the jury on all counts charging negligent operation of the train, negligence after deceased was seen, and wantonness, where the evidence on all such issues was conflicting.

**2. Railroads ⊙⟹377—Engineer may not assume person will leave track when circumstances negative knowledge of danger.**

The rule that a railroad engineer may assume that a grown person walking on the track ahead will get off, and is under no duty to slow or stop until it is apparent that he will not, does not apply, where the circumstances negative knowledge by such person of his danger, as where he is walking from the train, and the noise of a train passing on another track interferes with his hearing the one approaching from behind.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by A. C. Angle, administrator of estate of A. D. Darby, deceased, against Walker D. Hines, as Director General of Railroads, operating the Louisville & Nashville Railroad. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 264 Fed. 501, —— C. C. A. ——.

John S. Stone and T. A. McFarland, both of Birmingham, Ala., for plaintiff in error.

Frank S. White, Frank S. White, Jr., and G. R. Harsh, all of Birmingham, Ala., for defendant in error.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

CALL, District Judge. On February 21, 1918, A. D. Darby, accompanied by his grandson, Lamar Angle, while walking upon the track of the Louisville & Nashville Railroad, at a point between stations, was struck and killed by an engine operated by the plaintiff in error, attached to a passenger train approaching them from the rear. The grandson was killed at the same time.

The defendant in error brought suit in the circuit court of Jefferson county, Ala., against the railroad company, to recover damages, claiming that such killing was negligently done. The case was removed to the United States District Court for the Southern Division of the Northern District of Alabama. Upon proper proceedings the plaintiff in error was by order of court substituted as defendant, and the case dismissed as to the railroad company.

The declaration contains three counts. The first charges negligence in the operation of the train; the second charges that, after the discovery of the peril of the deceased, the servants of the de-

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fendant negligently killed him; the third, that the death was wantonly and wrongfully caused. To this declaration the plaintiff in error pleaded in short by consent, and the case was submitted to a jury, which, after hearing the evidence and the charge of the court, returned a verdict for the plaintiff and assessed the damages at $5,000, on which a judgment was entered against the plaintiff in error. It is this judgment which is sought to be reversed in the present proceeding.

The facts appearing from the record, which are not disputed, are that the deceased, accompanied by his grandson, a boy 9 years of age, and members of the family of A. C. Angle and living with him, left the house and walked up the track in a northerly direction towards a crossing, on their way to a neighbor's house. A. C. Angle, the son-in-law of Darby and the father of the boy, was employed by the plaintiff in error as track foreman, with a number of laborers under his supervision. He and the laborers were living in houses built by the railroad company upon the right of way. It was customary for the members of Angle's family and the laborers to walk upon the tracks when going from the houses to the crossing to the north. There was no station house built, but the accommodation trains stopped at this crossing to take on or discharge passengers. Just north of the house occupied by Angle there were three tracks; the siding being between the two main tracks. The tracks ran through a hilly country, requiring cuts and fills in building the roadbed. There was a high embankment between the house and the crossing, and no practicable path other than the railroad tracks. The train to which the engine striking the deceased was attached was going north at a speed of 40 or 45 miles an hour on the right-hand track going north, and on the left-hand track was a heavy freight train going south. The testimony of the plaintiff in the trial court was to the effect that no signal or warning was given by the engineer in charge of the passenger train. This is denied by the testimony of the defendant below, and both engineer and fireman testified that as soon as the persons were discovered upon the track warning signals were given, and that every effort was made to stop before striking the deceased. There was also some conflict in the testimony as to the distance within which a train running at the speed of this train could be stopped. Other facts are stated in the opinion.

[1] At the conclusion of the testimony the plaintiff in error requested the court to charge the jury that, if they believed the evidence, they must find a verdict for the defendant. This was refused, and exception noted, and is here assigned as error. Giving to the testimony and the inferences proper to be drawn therefrom due consideration, the court properly refused said instruction. It is true the engineer and fireman testified that a warning signal was given, and the engineer testified that he used every means to stop the train after discovering the peril before striking the deceased; yet it was for the jury to say, under all the testimony introduced on behalf of the plaintiff and defendant, under all the circumstances in evidence before them, whether such was the fact. The rule governing when the

case should be taken from the jury is laid down in Texas & Pacific Railway Co. v. Cox, 145 U. S. 606, 12 Sup. Ct. 905, 36 L. Ed. 829.

What we have said above applies equally to the second assignment. This assignment challenges the correctness of the court's refusal to give a charge that the jury could not find in favor of the plaintiff on the second count. The issue made on this count was whether the engineer had given the warning signals and used every effort to stop the train after discovering the peril.

The third error assigned is the court's refusal to charge the jury that they could not find for the plaintiff on the third count; the eighth that the court refused to charge that the jury could not find the fireman guilty of wanton conduct; and the ninth, that the court refused to charge that the jury could not find the engineer guilty of wanton conduct.

The trial judge submitted this case to the jury upon the view that deceased was a trespasser upon the right of way of the railroad, and that the servants of the defendant owed no duty to the deceased, except not to injure him through negligence after the discovery of the peril, or through willful or wanton act. The issue to be tried was clearly and comprehensively stated. The jury were instructed to find from the evidence whether the burden resting on the plaintiff to satisfy them that the death had been caused by the servants of the defendant through failure to use the means at command to avoid the injury, after the discovery of the peril, either by stopping the train, if it was possible, or by giving warning signals in order that deceased might save himself.

The fireman testified he was keeping a lookout ahead since passing the section gang, some mile and a quarter from the place where the accident occurred; had not mended his fires since such passing, and did not discover the deceased until within about 400 feet of him; that he immediately warned the engineer; that he could see the deceased upon the track as soon as any one upon the engine could; that upon receiving such warning the engineer first looked out the cab window and then applied his brakes and gave warning signals. The engineer also testified he was keeping a lookout ahead; that the deceased was within 200 feet of the engine when he was discovered by him; that he did not first look out his cab window when warned by the fireman, but first applied his emergency brakes and gave warning signals with the whistle; that it would have been wrong to have first looked out the window, as he might have struck the person on the track before he had time to apply his brakes and give signals. It is in evidence that the fireman could have seen the deceased upon the track 1,100 or 1,200 feet ahead, and the engineer some distance less. It is also in evidence that a freight train making much noise was passing on the west main track going south. The charges asked and refused would have withdrawn from the consideration of the jury the issue of wantonness by the defendant and each of his servants. Wanton conduct could have been charged against the defendant only through the acts of commission or omission of one or both of his servants.

Wantonness is the moral and legal equivalent of intentional wrong, and rests upon the just apprehension with which the wrong done is charged, not of the mere possibility, but of a probability, a likelihood, that untoward consequences will ensue to some one, and this probability, this likelihood, must have support and foundation in a reasonable interpretation of the evidence. There must be a present consciousness that injury will probably result from the act done or omitted to be done (Louisville & Nashville Railroad Co., v. Porter, 196 Ala. 25, 71 South. 335); a reckless doing or omitting to do an act to safeguard one in peril after the discovery of the peril. Was the trial judge justified in giving either of the three charges asked under the state of the evidence before the jury? The court had already charged the jury that the defendant below owed no duty to the plaintiff to keep a lookout, and could consider the evidence admitted as to the distance within which the plaintiff could have been seen, in reaching the conclusion as to whether the fireman and engineer really saw the deceased when he was at a greater distance than they had testified to. If the jury, considering all the evidence, had reached the conclusion that the fireman saw deceased when he could have seen him, because he testified he had kept a lookout ahead all the time, and did not warn the engineer until the engine was within 200 feet of the deceased, would not such conduct fall within the definition of wantonness?

We think it would. It will be borne in mind that the engineer testified he had kept a lookout since passing the section gang, about a mile and a quarter from the place of the accident, and the jury would have the right to consider his testimony in deciding when he actually saw the deceased, the further fact of a noisy freight train passing at that time, the question of the distance within which the train could have been stopped, the fact that deceased was upon the track with his back toward the approaching engine, the passenger train making little noise as compared to the passing freight, and, finally, whether warning signals were or were not given. It seems to us that the trial court could not have properly given either of the three charges requested by the defendant and assigned in his third, eighth, and ninth assignments.

[2] The fourth assignment seeks a reversal because the court refused a charge that the engineer had a right to assume that a grown person discovered on the track ahead of a moving train will get off, and the engineer is under no duty to slow up or stop his train until it becomes apparent to him, in the exercise of reasonable care, that such grown person will not get off the track.

This charge in the instant case ignores the fact that the engine was approaching from the rear and that there was nothing to lead any prudent person, under the circumstances surrounding the parties, to think that the deceased was aware of the approaching train. As said by the court in L. & N. R. R. Co. v. Rayburn, 198 Ala. 197, 73 South. 464:

"While a prudent, competent engineer may ordinarily presume that an adult in an exposed situation on or near the track ahead of his engine will conserve his own safety if he is aware or warned of his danger, * * *

the presumption is not to be indulged when the party exposed is discovered" under circumstances which negative his knowledge of the danger, or the circumstances of the discovery are such as would not justify in a prudent person such presumption.

The charge was not applicable to the circumstances of this case and was properly refused.

The charge asked and refused, and assigned as error in the fifth assignment, ignores the issue as to whether any warning signal was given, and attempts to confine the attention of the jury to the one issue whether or not the train could have been stopped in time to avoid the accident. It would have been error for the trial court to have given said charge.

The same may be said of the requested charge embodied in the sixth assignment. This charge contains the further vice that it attempts to limit defendant's liability to a wanton injury, withdrawing from the jury's consideration any question of negligence on the part of defendant's servants subsequent to the discovery of deceased's peril. Central of Georgia Ry. Co. v. Blackman, 169 Ala. 304, 53 South. 805.

What we have said above as to the sixth assignment applies equally to the requested charge on which the seventh assignment is based.

We find no reversible error, and the judgment is therefore affirmed.